UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DERRICK HARRIS,

                            Plaintiff,

            -against-                                    22-CV-1763 (JGLC)

THE CITY OF NEW YORK, et al.,                       **<u>OPINION AND ORDER</u>**

                            Defendants.

JESSICA G. L. CLARKE, United States District Judge:

On September 12, 2011, Derrick Harris was arrested by officers of the New York City
Police Department and charged with sexual assault in connection with two separate incidents.
Following his arraignment on those charges, Mr. Harris was charged with escaping from the
courthouse. A judge dismissed the escape charge on August 24, 2015, and later that month,
following a trial in which Mr. Harris represented himself, a jury acquitted him on one count of
sexual assault, and the remaining charges were eventually dropped on December 6, 2018.

On March 3, 2022, Mr. Harris commenced this action against the City of New York
("City"); unnamed Officers from the New York City Department of Corrections ("Correction
Officers"); New York City Police Department Officers Eliezer Pabon, Danielle Hankerson,
Suthom Ungcharoen, Craig Bullard, and Thomas Farrell (collectively, the "NYPD Defendants,"
and together with the City and Correction Officers, the "City Defendants"); and New York
County Assistant District Attorneys Caroline Holderness, Caroline Serino, and Jung Park
(collectively, the "ADA Defendants"). Mr. Harris brings claims under 42 U.S.C. § 1983 and New
York State law for malicious prosecution, denial of his right to a fair trial, due process violations,
failure to intervene, conspiracy, and municipal liability under *Monell v. Department of Social
Services*, 436 U.S. 658 (1978).

The City Defendants and ADA Defendants now move to dismiss, asserting, among other arguments, that Mr. Harris has failed to state any claims against them and that numerous of Mr. Harris's claims are time barred. The Court agrees and GRANTS both parties' motions to dismiss. Mr. Harris's action, however, is not dismissed in its entirety, because the City Defendants did not move to dismiss the claims involving Officer Pabon. The Court also grants Mr. Harris leave to amend with respect to certain claims.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Fourth Amended Complaint and presumed to be true for the purposes of this motion.

On September 12, 2011, Pabon and other police officers broke down the door to Mr. Harris's home and arrested him for sexually assaulting a woman in his home (the "Home Incident"). *See* ECF No. 94 ("FAC") ¶¶ 33, 35, 91. During the arrest, Officer Hankerson arrived at Mr. Harris's home and mentioned that there was an assault of a woman reported earlier that day at a park across the street from Mr. Harris's residence (the "Park Incident"). *Id.* ¶ 39. Though the woman from the park stated that she could not provide any identifying characteristics of her assailant, she told Hankerson that he was a "tall black man." *Id.* Pabon then reported that Hankerson told him that the woman from the park positively identified Mr. Harris, which Mr. Harris asserts is untrue. *Id.* ¶¶ 42, 86. This information led to Mr. Harris being charged with sexually assaulting the woman in the park. *Id.* ¶¶ 40–41.

Sometime around September 12, 2011, ADA Holderness and Pabon applied for a search warrant to search Mr. Harris's home (the "Home Search"). *Id.* ¶¶ 45–46. Pabon would later testify that Holderness wrote the search warrant application, which stated under the "Reasonable

Cause" section of the application that Pabon had a conversation with Mr. Harris, which Mr. Harris alleges never occurred. *Id.* ¶ 46.

Following the arrest, Mr. Harris was brought to "Central Booking," where a judge later set bail in the amount of $250,000. *Id.* ¶¶ 50–51. After he was arraigned, Bullard, an NYPD officer, directed Mr. Harris to remain in the courtroom until his family secured his bail payment. *Id.* ¶ 53. Believing that bail had been posted, officers Bullard and Farrell escorted Mr. Harris outside the courthouse. *Id.* ¶ 55. Mr. Harris later arrived home only to be arrested once again, this time by Officer Ungcharoen, on the charge of escaping (the "Escape Charge"). *Id.* ¶¶ 57–59. Sometime around September 15, 2011, Mr. Harris was arraigned on a felony complaint issued by Ungcharoen. *Id.* ¶ 60. Mr. Harris alleges that Ungcharoen's criminal complaint was later illegally replaced by one written by Farrell. *Id.* ¶ 61.

While he was awaiting his criminal trial, Mr. Harris was incarcerated at Riker's Island for approximately four years, until November 2015. *Id.* ¶¶ 67, 106. The Correction Officers and inmates physically and mentally abused Mr. Harris during his period of incarceration. *Id.* ¶¶ 68–71.

Mr. Harris's trial began in the summer of 2015. *See id.* ¶ 92. Sometime in July 2015, immediately before trial was set to begin, ADAs Holderness, Serino, and Park provided Mr. Harris with a copy of the New York City Medical Examiner's Report (the "Medical Examiner's Report"). *Id.* Mr. Harris believes that "Defendants" were in possession of the Medical Examiner's Report as early as September 26, 2011. *Id.* ¶ 98. The Medical Examiner's Report excluded Mr. Harris as a source of the DNA collected in relation to the Home Incident but did not include testing for lubricants. *Id.* ¶¶ 93–99. At trial, the ADA Defendants argued that further testing for lubricants could not be done, which led Mr. Harris to arrange for testing for lubricants

to be completed by an outside laboratory. *Id.* ¶¶ 99, 111. The additional testing proved that there was "no presence of [lubricant] in [the alleged victim of the Home Incident's] body." *Id.* ¶ 111.

In August 2015, a jury returned a partial verdict finding Mr. Harris not guilty on the top charge of sexual assault for the Home Incident but deadlocked on lower charges and the Escape Charge. *Id.* ¶ 101. By November 2015, the judge overseeing Mr. Harris's criminal trial dismissed the Escape Charge. *Id.* ¶ 108. On December 6, 2018, the New York County District Attorney's Office dismissed all remaining counts in the indictment (the "Indictment"), except for one charge unrelated to this action, which was dismissed on December 19, 2019. *Id.* ¶ 114–15. It is unclear from the FAC when the charges relating to the Park Incident were dismissed, but based on the FAC, it appears to be no later December 6, 2018.

Plaintiff filed the current action on March 3, 2022. ECF No. 1. He amended his Complaint three more times before filing the operative Fourth Amended Complaint. *See* ECF Nos. 32, 73, 79, 94. At a conference before the Court on October 3, 2023 (the "October 3, 2023 Conference"), the Court agreed to let Plaintiff amend his Complaint for a fourth time on the condition that he remove all state law claims from the Complaint. *See* ECF No. 91. Plaintiff filed the FAC on October 20, 2024 and included claims arising under New York State law.

On January 12, 2024, the City Defendants and the ADA Defendants each filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 100, 103.

## LEGAL STANDARD

### I.      Motion to Dismiss for Failure to State a Claim

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir.

2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

*Pro se* complaints "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citation omitted). "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (internal citation omitted); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Because Mr. Harris is proceeding *pro se*, the Court must liberally construe his Complaint and interpret it "to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal citation omitted). "Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations." *Blue v. City of New York*, No. 16-CV-9990 (VSB), 2018 WL 2561023, at *4 (S.D.N.Y. June 4, 2018) (citing *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

## II.    Civil Rights Claims Under 42 U.S.C. § 1983

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). To establish individual liability under Section 1983, a plaintiff must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

### DISCUSSION

The Court reads the FAC to allege the following causes of action under 42 U.S.C. § 1983: (1) constitutional violations, including false arrest, unreasonable searches, unlawful conditions of confinement, denial of the right to a fair trial, malicious prosecution, conspiracy to violate substantive and procedural due process rights, and failure to intervene against all the individual defendants and the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (2) failure to intervene against the NYPD Defendants, ADA Defendants, Correction Officer Defendants, and Hankerson; (3) malicious prosecution against the NYPD and ADA Defendants, including violations of disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) against the ADA Defendants; (4) denial of the right to a fair trial against the NYPD Defendants; (5) violations of substantive and procedural due process rights against all Defendants, including conspiracy to interfere with civil rights; (6) negligence and gross negligence against all Defendants; (7) negligent hiring, screening, retention, supervision, and training and inadequate supervision under New York State law and Section 1983 against the City; (8) negligent infliction

of emotional harm against the City; and (9) intentional infliction of emotional harm against the City.

The Court first dismisses duplicative causes of action and the New York State law claims that Mr. Harris voluntarily withdrew. Turning to the merits, the Court finds that all claims related to the Escape Charge, false arrest, conditions of confinement, and Home Search are time barred and therefore dismissed. What remains are Mr. Harris's claims relating to the Park and Home Incidents. The Court analyzes each of Mr. Harris's remaining causes of action with respect to all Defendants, other than Pabon, determining that none state a claim. Additionally, because the City Defendants do not move to dismiss Mr. Harris's non-time barred claims with respect the Pabon, the Court does not analyze or dismiss the remaining claims against him. Accordingly, the Court GRANTS Defendants' motions to dismiss and dismisses all claims in this action except those with respect to Pabon. The Court also grants Plaintiff leave to amend certain claims.

## I.     The Court Dismisses All Duplicative Causes of Actions and New York State Law Claims

During the October 3, 2024 Conference, Mr. Harris agreed to remove all New York State law claims from the FAC. *See* ECF No. 91. However, those claims were nonetheless included in the FAC filed on October 20, 2024. *See generally* FAC at 28–56. In his opposition to the City Defendants' motion to dismiss, Mr. Harris acknowledged the mistake and voluntarily withdrew "all of his state law claims against all defendants." ECF No. 113 at 4. Accordingly, the Court dismisses all of Mr. Harris's claims based on state law against each Defendant with prejudice.

The Court also dismisses Mr. Harris's seventh cause of action against the City for negligent hiring, screening, retention, supervision, and training and inadequate supervision. To the extent this claim is brought under state law, it is dismissed for the reasons stated above. To

the extent Plaintiff brings this claim under Section 1983, it is duplicative of Plaintiff's *Monell* claim in the first cause of action.

Accordingly, Plaintiff's causes of action six through nine are dismissed, as are any claims in causes of action one through five based on New York State law.

## II.    Plaintiff's Claims Related to the Escape Charge, False Arrest, Conditions of Confinement, and Home Search Are Time Barred

In New York, the statute of limitations for Section 1983 claims is three years. *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023) (internal citation omitted). "A claim accrues, and the limitations period begins to run, when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Walters v. City Dep't of Correction*, 517 F. App'x 41, 42 (2d Cir. 2013) (quoting *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999)) (internal quotation marks omitted). For these claims, accrual occurs when the plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (cleaned up).

Mr. Harris argues that none of his claims are time barred because their accrual date started when "he [was] acquitted of every single charge" in the Indictment, which did not occur until December 19, 2019. ECF No. 11 at 4–9. This is incorrect. The accrual date for claims under Section 1983 is analyzed individually, not based on the date that all charges in an accusatory instrument are dismissed. *See Nowacki v. Town of New Canaan*, No. 16-CV-407 (JAM), 2017 WL 1158239, at *8–9 (D. Conn. Mar. 28, 2017) (analyzing the accrual date for claims based on four different charges based on the date each charge was dismissed). Instead, the Court must determine for each claim when Plaintiff had "a complete and present cause of action." *See Wallace*, 549 U.S. at 388.

Here, any cause of action arising from Mr. Harris's alleged false arrest and illegal search of his home accrued in 2011 when Plaintiff was arraigned and the illegal search occurred. *See Wallace*, 549 U.S. at 397 ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *Rivera v. City of New York*, No. 16-CV-9709 (GHW), 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) ("Detention pursuant to legal process occurs when, for example, the plaintiff is bound over by a magistrate or arraigned on charges.") (cleaned up); *Allen v. Antal*, 665 F. App'x 9, 12 (2d Cir. 2016) (calculating accrual based on the time that the alleged illegal search and seizure, arrest, and arraignment occurred); *Ndemenoh v. Boudreau*, No. 20-CV-4492 (RA), 2023 WL 6122852, at *4 (S.D.N.Y. Sept. 19, 2023) (collecting cases). Therefore, to be timely, the claims must have been filed by 2014. Because Mr. Harris commenced this action on March 3, 2022, these claims are time barred. ECF No. 1.[1]

Likewise, Plaintiff's claims relating to his unlawful conditions of confinement while at Rikers Island accrued, at the absolute latest, sometime in 2015 immediately prior to his release from the facility. *See Watt v. City of New York*, No. 22-CV-6841 (AMD), 2024 WL 3338267, at *9 (E.D.N.Y. July 9, 2024) (holding that the statute of limitation for unlawful conditions of confinement claim accrued on the last day of the plaintiff's confinement, which is the latest plaintiff could have become aware of any constitutional violations). Any unlawful conditions of confinement became time barred three years later in 2018, four years before Mr. Harris filed the Complaint.

---

[1] This time-barred claim includes Plaintiff's allegations against ADA Holderness that she included a false statement in the search warrant application.

Finally, Plaintiff's claims based on the Escape Charge, which appear to include claims for malicious prosecution, denial of the right to a fair trial, and due process violations, began to accrue in 2015 when the criminal court dismissed the Escape Charge, which is the latest date that Plaintiff knew or could have known of the injury forming the basis of his action. *See Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995) (malicious prosecution claims accrue "when the underlying criminal action is conclusively terminated"); *Ndemenoh*, 2023 WL 6122852, at *4 (finding that plaintiff's claim for denial of the right to fair trial accrued "upon the conclusive and favorable termination of his underlying criminal proceeding[]") (citing *McDonough v. Smith*, 588 U.S. 109, 117 (2019)). Thus, any claims related to the Escape Charge are time barred.

As a result, all claims against the following Defendants are dismissed because their alleged involvement is limited to the above-listed time-barred claims: (1) Defendant Corrections Officers, who are only relevant to Mr. Harris's period of incarceration; and (2) Ungcharoen, Bullard, and Farrell, who are only relevant to the Escape Charge.

Mr. Harris' remaining claims relating to the Home Incident and Park Incident are timely. These are: (1) failure to enact proper policies/practices, supervision, and training, which resulted in the violation of Plaintiff's constitutional rights, against the City (2) failure to intervene against the ADA Defendants and NYPD Defendants, (3) malicious prosecution and *Brady* violations against the NYPD Defendants and ADA Defendants, (4) deprivation of the right to a fair trial against the NYPD Defendants, and (5) due process violations against all Defendants.

 Despite the fact that all charges relating to the Home and Park Incidents were dismissed on December 6, 2018, a New York State Executive Order issued during the COVID-19 pandemic tolled the applicable statute of limitations for 228 days. *See Liverpool v. City of New York*, No. 20-CV-4664 (ER), 2023 WL 7723165, at *8 (S.D.N.Y. Nov. 15, 2023) (cleaned up) ("[C]ourts in

this Circuit have applied tolling orders issued by New York State Governor Andrew Cuomo during the coronavirus pandemic to federal filing deadlines."); *Powell v. United States*, No. 19-CV-11351 (AKH), 2022 WL 1645545, at *2 (S.D.N.Y. May 24, 2022) (finding a plaintiff's "claims were timely filed because New York State Executive Order No. 202.8, 9 NY ADC 8.202.8 [], a pandemic measure, and several subsequent executive orders tolled the statute of limitations for a total of 228 days."). Thus, the expiration of the statute of limitation for claims arising out of the Home Incident and Park Incident was extended from December 6, 2021 to July 22, 2022. These claims are therefore timely.[2]

### III.    Plaintiff Fails to Sufficiently Allege Municipal Liability

Reading the FAC to raise the strongest claim suggested, the Court construes Plaintiff's first cause of action to assert liability against the City for the constitutional violations alleged in the Complaint.[3] "[T]o state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights." *Price v. City of New York*, No. 15-CV-5871 (KPF), 2018 WL 3117507, at *6 (S.D.N.Y. June 25, 2018) (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)). A plaintiff can plead a policy, custom, or practice by alleging at least one of the following:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to

---

[2] The ADA Defendants agree with this application of the statute of limitations to Mr. Harris's claims. *See* ECF No. 105 at 10–15, 11 n.13.
[3] The Court assumes, for purposes of its analysis, that Plaintiff's claims against the City are timely.

such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Edrei v. City of New York*, 254 F. Supp. 3d 565, 579 (S.D.N.Y. 2017), *aff'd sub nom. Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018) (internal citation omitted). Additionally, a plaintiff must "prove a causal link between the policy, custom or practice and the alleged injury in order to find liability against a municipality." *Blue*, 2018 WL 2561023, at *12 (internal citation omitted).

The FAC alleges liability against the City under the first, third, and fourth theories. Specifically, Mr. Harris claims that the City (1) "had in effect actual and/or *de facto* policies, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged," (2) "had in effect and/or de facto policies, practices, customs and usages of failing to properly train, screen, supervise and discipline employees and police officers, and of failing to inform the individual Defendants' supervisors of the need to train, screen, supervise and discipline said Defendants," and (3) with knowledge "that such lack of training, screening, supervision, and discipline leads to improper conduct, acted with deliberate indifference in failing to establish a program of effective training, screening, supervision and discipline." FAC ¶¶ 133–35.

Plaintiff fails to state a claim for municipal liability under any theory. The FAC lacks any factual allegations supporting a *Monell* claim, and instead relies primarily on boilerplate language and conclusory allegations. Mr. Harris does not allege facts suggesting even the existence of a formal policy, widespread practice, or deficiency in any of the City's training or supervision, much less how that conduct caused a violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's claims against the City are dismissed.

**IV.    Plaintiff Fails to State a Claim for Failure to Intervene**

Mr. Harris's second cause of action asserts that the ADA Defendants and NYPD Defendants, failed to intervene to prevent the alleged constitutional violations Plaintiff suffered. Plaintiff's claims fail as a matter of law.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "Liability only attaches if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Blue*, 2018 WL 2561023, at *11 (quoting *Bouche v. City of Mount Vernon*, No. 11-CV-5246 (SAS), 2012 WL 987592, at *5 (S.D.N.Y. Mar. 23, 2012)).

The only specific allegation in this cause of action relates to Hankerson, who Plaintiff alleges "took four years" to "help[] save [him] from being wrongfully convicted during trial when she testified that P.O. PABON had lied in his arrest complaint to establish probable cause." FAC ¶ 154. This sole bare allegation, however, is insufficient to support a claim for failure to intervene. The FAC contains no allegations that Hankerson had a realistic opportunity to prevent Pabon from lying in the arrest complaint or that she failed to take reasonable steps to intervene. In fact, the FAC does not even suggest that Hankerson knew of Pabon's alleged lie until she testified at Mr. Harris's trial. *Id.* ¶ 87.

The claims against the ADA and other NYPD Defendants are similarly deficient—the FAC does not specify which of these Defendants failed to intervene, whether they had a realistic

opportunity to prevent harm to Plaintiff, and whether they failed to take the reasonable steps needed to prevent that harm. Accordingly, Plaintiff's failure to intervene claim is dismissed.

## V.    Plaintiff Fails to State a Claim for Malicious Prosecution or Violation of *Brady*

Mr. Harris brings a cause of action against the NYPD Defendants and ADA Defendants for malicious prosecution related to the Home Incident and Park Incident. In his opposition to the City Defendant's motion to dismiss, Plaintiff withdraws the malicious prosecution claims against Hankerson, Ungcharoen, and Bullard, and clarifies that he "only seeks malicious prosecutions claims against Defendants Pabon" and Farrell. ECF No. 113 at 14–15. As explained above in Section II, all claims against Farrell, whose only involvement was in the Escape Charge, are dismissed as time barred. The City Defendants did not move to dismiss with respect to Pabon. Thus, the only claims for malicious prosecution for the Court to consider are those against the ADA Defendants.

Mr. Harris alleges the following:

(1) ADAs Holderness, Serino and Park fraudulently procured a grand jury indictment for charges relating to the Home Incident by withholding exculpatory evidence in the form of "test results from the Medical Examiner's Office which indicated the alleged victim had lied about the entire alleged incident";

(2) ADAs Holderness, Serino and Park "pretended they had never performed an important fingerprint test";

(3) ADAs Holderness, Serino and Park withheld a Medical Examiner's Report until "immediately before trial";

(4) ADA Holderness "refused to finish" exculpatory DNA testing; and

(5) ADAs Park and Serino refused to complete and were opposed to allowing Plaintiff to complete exculpatory DNA testing.

FAC ¶¶ 92, 163–64, 169–71, 174–77, 184, 197.

The Court construes these allegations as support for claims falling into two buckets: claims for malicious prosecution and claims for *Brady* violations. The Court analyzes the first allegation that the ADA Defendants withheld exculpatory evidence from the grand jury as claims for malicious prosecution. The Court analyzes the remaining allegations under *Brady*. *See Hutchins v. Solomon*, 16-CV-10029 (KMK), 2018 WL 4757970, at * (S.D.N.Y. Sept. 29, 2018) (separately considering plaintiff's malicious prosecution claim and the plaintiff's claim related *Brady* violations).

### A. Malicious Prosecution

To establish a malicious prosecution claim under Section 1983, a plaintiff must prove "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor . . . , [and] that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

It is undisputed that a criminal proceeding related to the Home Incident and Park Incident was commenced against Mr. Harris, that it terminated in his favor, and that he suffered a Fourth Amendment deprivation of liberty. Nonetheless, the FAC does not state a claim for malicious prosecution against the ADA Defendants.

The ADA Defendants are immune from liability under Section 1983 for the allegation that they fraudulently obtained a grand jury indictment. The Second Circuit instructs that "prosecutors are immune from § 1983 liability for their conduct before a grand jury," including "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury." *Hill v. City of New York*, 45 F.3d 653, 661–62 (2d Cir. 1995); *see also Bernard v. County of*

*Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (observing that prosecutors are entitled to absolute immunity for "knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from, the various grand juries that returned the[ ] flawed indictments").

### B. *Brady* Violation

Under *Brady* and its progeny, "[the] government has a duty to disclose evidence favorable to the accused when it is material to guilt or punishment." *United States v. Madori*, 419 F.3d 159, 169 (2d Cir. 2005) (citing *Brady* 373 U.S. at 87). To establish a *Brady* violation, a plaintiff must show that: (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) prejudice ensued. *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (quoting *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004)).

Here, as stated above, Plaintiff alleges that the ADA Defendants suppressed fingerprint evidence, withheld the Medical Examiner's Report until "immediately before trial," and refused to conduct additional DNA-related testing. These claims, however, cannot survive a motion to dismiss.

First, the ADA Defendants are immune from liability under Section 1983 for the alleged *Brady* violations. "Prosecutors are individually immune from § 1983 liability for decisions undertaken in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant." *Newson v. City of New York*, No. 16-CV-6773, 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019) (citing *Warney v. Monroe County*, 587 F.3d 113, 125 (2d Cir. 2009)); *see also Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (holding that a prosecutor is "entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information,'"

notwithstanding the "reprehensible" nature of that conduct). Thus, the ADA Defendants' conduct in delaying delivery of the Medical Examiner's Report and withholding fingerprint evidence is protected by the doctrine of absolute immunity.

Second, the ADA Defendants alleged refusal to conduct additional testing does not violate *Brady*. "*Brady* does not require the Government to 'acquire' evidence or information from others." *United States v. Avenatti*, No. 19-CR-374 (JMF), 2022 WL 457315, at *12 (S.D.N.Y. Feb. 15, 2022) (citing *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) and *United States v. Raniere*, 384 F. Supp. 3d 282, 325 (E.D.N.Y. 2019)). Further, "evidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) (cleaned up). Here, the FAC fails to demonstrate that the ADA Defendants were obligated to conduct further tests, and also shows that Plaintiff obtained the additional testing he desired on his own. FAC ¶ 111. Further, Plaintiff does not allege that the outcome of his trial would have been different had the ADA Defendants conducted the additional test.

Accordingly, the Court dismisses all claims for malicious prosecution and violation of *Brady* against the ADA Defendants.

## VI.    Plaintiff Fails to State a Claim for Deprivation of the Right to a Fair Trial

Mr. Harris's fourth cause of action asserts a claim for deprivation of the right to a fair trial against the NYPD Defendants and Pabon in particular. In his opposition to the City Defendants' motion to dismiss, Plaintiff "withdraws this claim against Defendant Hankerson and Ungcharoen." ECF No. 114 at 17. The remaining three NYPD Defendants are Farrell, Bullard, and Pabon. As explained above in Section II, all claims against Farrell and Bullard are dismissed

as time barred, and the City Defendant's did not move to dismiss with respect to Pabon. Accordingly, this claim is dismissed against all Defendants except for Pabon.

## VII.  Plaintiff Fails to State a Claim for Due Process Violation

Mr. Harris's fifth cause of action asserts claims against all Defendants for violations of his substantive and procedural due process rights. The Court also construes the FAC to assert a conspiracy claim against all Defendants to deprive him of his due process rights. Neither claim survives Defendants' motions to dismiss.

Plaintiff's non-time-barred claims for substantive due process and procedural due process are predicated on the same facts and reiterate the same claims as his claims for malicious prosecution and violation of *Brady*. *See* FAC ¶¶ 222–36. "For that reason, Plaintiff fails to state [his] substantive due process and procedural due process claims because they are merely duplicative of [his] other claims that are explicitly protected under other constitutional sources." *Cabello-Setlle v. Cnty. of Sullivan*, No. 21-CV-7477 (NSR), 2022 WL 4387637, at *11 (S.D.N.Y. Sept. 22, 2022) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

To state a claim for conspiracy under Section 1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Blue*, 2018 WL 2561023, at *9 (quoting *Chamberlain*, 986 F. Supp. 2d at 287). "In order to survive a motion to dismiss, § 1983 . . . conspiracy claims must 'provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy.'" *Id.* at *12 (quoting *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013)).

Here, the FAC contains only conclusory allegations of a conspiracy. For instance, Plaintiff alleges that Defendants "acted in concert to fabricate the charges," "conspired to injure plaintiff in his person and property," and "jointly caused such deprivation of rights by acting in concert to disseminate false information concerning the plaintiff." FAC ¶¶ 232–34. Such conclusory allegations, without more, fail to support that any of the Defendants engaged in a conspiracy and must be dismissed.

Accordingly, Plaintiff's cause of action for violation of due process rights is dismissed.

## VIII.    Plaintiff is Granted Leave to Amend

"Leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [he] has a valid claim." *Atherley v. N.Y.C. Dep't of Educ.*, No. 23-CV-383 (JGLC), 2024 WL 1345741, at *13 (S.D.N.Y. Mar. 29, 2024) (internal citation omitted). The Second Circuit interprets Rule 15 of the Federal Rules of Civil Procedure liberally "consistent with [its] strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks and citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). But "[l]eave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). The Court finds that permitting Mr. Harris to amend claims that are not time barred or subject to prosecutorial immunity would not be futile or in bad faith, nor would it cause undue delay or prejudice to Defendants. *Loc. 3599, N.Y.C. Dep't of Env't Prot. Tech. Pro. Emps. v. City of New*

*York*, No. 23-CV-1035 (JGLC), 2024 WL 966077, at *16 (S.D.N.Y. Mar. 6, 2024) (collecting

cases). Although Mr. Harris has amended the complaint several times, he has not previously had

an opportunity to cure the deficiencies of which he is now on notice. As such, the Court will

grant one final opportunity for Mr. Harris to amend his complaint.

For clarity, Plaintiff's claims for malicious prosecution, denial of the right to a fair trial,

and violations of Plaintiff's substantive and procedural due process rights remain and are not

dismissed with respect to Officer Pabon. Mr. Harris is granted leave to file an amended

complaint to flesh out allegations relating to the following claims only: (1) liability against the

City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) for the following

constitutional violations: (a) failure to intervene, (b) conspiracy to violate Plaintiff's substantive

and procedural due process rights, (c) malicious prosecution with respect to Officer Pabon's

alleged actions, and (d) denial of a right to fair trial; (2) failure to intervene against the ADA

Defendants, and Hankerson; and (3) conspiracy to violate Plaintiff's substantive and procedural

due process rights against the ADA Defendants and Hankerson. Mr. Harris is permitted to add

factual details to flesh out these existing claims, and to reorganize his claims with greater clarity

and precision, but he may not add any new causes of action not included in the FAC or discussed

herein.

All claims related to (1) the Escape Charge, (2) false arrest, (3) conditions of

confinement, and (4) Home Search are dismissed with prejudice. Plaintiff's claims for malicious

prosecution and *Brady* violations are dismissed with prejudice with respect to the ADA

Defendants. Plaintiff's claims for denial of the right to a fair trial are dismissed with prejudice

with respect to all Defendants *except* Officer Pabon and the City. Plaintiff's claims for liability

against the City based on (1) the Escape Charge, (2) false arrest, (3) conditions of confinement,

(4) Home Search, and (5) malicious prosecution and *Brady* violations with respect to the ADA Defendants are dismissed with prejudice. Plaintiff's claims based on New York State law are dismissed with prejudice.

Accordingly, the Court grants Mr. Harris leave to amend the Complaint and ORDERS that Ms. Harris to file an amended complaint by **November 1, 2024**.

## CONCLUSION

For the reasons stated above, the Court GRANTS the City Defendants' and ADA Defendants' motions to dismiss. The Clerk of Court is directed to terminate ECF Nos. 100 and 103.

Dated: September 27, 2024
     New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge